## Trauger *versus* Sassaman.

1. The uniform, undisturbed, and exclusive use in common with others, of a piece of ground adjoining a church, for the fastening therein the horses of the worshippers, for above seventy years, will give title thereto by the statute of limitations.

2. For obstruction in the use of such a privilege or easement, an action of trespass will lie.

3. Where one tenant in common is ousted from his possession by his co-tenant, he may maintain trespass.

4. The open space of ground in dispute having been encroached upon under pretence of enlarging the graveyard, it was competent for plaintiffs to show that they had offered to give for that purpose, a share of a lot which had been purchased for a graveyard; this, in order to show that there was no necessity for the encroachment on the ground in question.

ERROR to the Common Pleas of *Bucks county*.

This was an action of trespass *quare clausum fregit* brought to February term, 1849, by Trauger and Campbell, trustees of the Lutheran Church of Nockamixon, against Sassaman and others, for the erection of a wall and cutting some trees in a grove or vacant space in front of the church above referred to. Testimony was given to the effect that the ground in question had been occupied by the Lutheran and a German Reformed congregation for more than seventy years. The two congregations worshipped in the same church. The ground was used for hitching horses and placing carriages by those attending church, and in attending at funerals. The defendants enclosed the premises by a wall, and cut some trees upon it. The trustees showed no conveyance of the premises, but relied on a possession for above twenty-one years, and claimed for above that period an exclusive possession.

The defendants claimed under a patent from the Penns, and conveyances down to Lawrence Pearson, who by his will, dated in 1801, and proved 12th April, 1803, directed all his lands (on the part of defendants, alleged to include the ground in question) to be sold at public sale, by the executors of his will, after the death of his widow. The *defendants* offered in evidence a deed from the executors of Lawrence Pearson to the *heirs* of the said Pearson, for the *locus in quo*, dated 7th August, 1821, and recorded 5th April, 1828. It did not appear from the face of the deed, that the sale was a public one, nor was it shown by extrinsic evidence that such was the case. The *habendum* in the deed being "*to the heirs* of Lawrence Pearson, deceased, and their heirs for ever, for the entire use of said heirs, for shade and hitching their horses, &c., when convenient."

Plaintiffs objected to this deed. Objection overruled, and plaintiffs excepted.

Defendants claimed as or under heirs of Pearson.

[Trauger *v.* Sassaman.]

On the part of defendants, testimony was given that Pearson's heirs and both congregations used the ground in common, since 1815; that it cannot be used since the erection of the wall, as it was used before; that no attempt was made to drive away Pearson's heirs before the wall was built; that the heirs frequently go to the German Reformed church, and sometimes to the Lutheran church.

On part of plaintiffs, it was offered to prove, that the Lutherans purchased a graveyard, and offered half to the German Reformed party. Objected to, rejected, and exception on part of plaintiffs.

The part of the will of Lawrence Pearson which is material in this case, is as follows:

" And it is my will, if my said wife should survive me, that my executors shall rent the messuages or tenements and plantation situate in the said township of Nockamixon, whereon I now live, and the rent thereof to be applied to, and made use of, for the maintenance, &c., of my said wife in a comfortable manner during her natural life, in lieu of her dower; also, it is my will that if my said wife should survive me, that immediately after her decease, or should I survive her, that after my decease, that my executors, or the survivor of them, do, as soon as may be advisable and prudent for them or him so to do, to sell at public sale or vendue, all my lands and tenements of which I may be lawfully seized at the time of my death. First giving due and timely notice hereof by printed handbill or advertisement, setting forth the time and place of said sale," &c.

On the part of plaintiff, various points were proposed, the second of which was—

That if the plaintiffs, in common with the other congregation, and in common with persons claiming to be the heirs of Lawrence Pearson, have mutually used and occupied the property in dispute for a common purpose, for a period of twenty-one years and upwords, they are entitled to recover.

3d. That if the plaintiffs used and occupied the *locus in quo*, together with the members of the German Reformed church upwards of twenty-one years previous to the deed made by the executors of Pearson to the heirs of Pearson, and from that time down to the time of committing the alleged trespass, they are entitled to recover in this action.

4th. That the deed to the heirs being for a special purpose, they had no power or right to transfer or devote it to any other purpose or use, than that mentioned in their deed.

5th. That a grant of the right to use this property for hitching horses, may be presumed to be made to the plaintiffs from the free and undisturbed possesion of it for a period of twenty-one years, together with the evidence of their having contributed to the

[Trauger *v.* Sassaman.]

repairs of that part of the grove connected with and adjoining the *locus in quo.*

KRAUSE, J., in relation to the second point, charged that for the interruption of an easement, an action of trespass cannot be maintained. As to the third point, he charged, that if the possession was held by plaintiffs in common with the heirs of Pearson, and the heirs had the title, the law was otherwise than as stated in the point. To the fourth, that if some of the heirs of Pearson are defendants in the case, the plaintiffs have no right to complain of the property being devoted to a different purpose from that stated in the deed. As to the fifth, that if the plaintiffs have no more than an easement, they cannot recover in this action, and must resort to some other remedy.

Verdict for defendants.

It was assigned for error:

1. The court erred in receiving in evidence the deed from the executors of Pearson to his heirs.

2. The court erred in rejecting evidence to prove that the Lutheran congregation purchased a graveyard and offered half of it to the German Reformed.

3. The court erred in their answers to the several propositions made by the counsel for plaintiffs.

The case was argued by *Wright* and *Du Bois,* for plaintiffs in error, who were plaintiffs below.—The power in the will of Pearson was to sell at *public* sale, and a private sale, under such a power, is void: 7 *Barr* 87.

The evidence to prove that we had offered to divide the lot purchased for a graveyard, was to show that there existed no necessity for enclosing the ground which the defendants alleged was necessary for that purpose.

That plaintiffs below were entitled to the premises by possession: 3 *Ser. & R.* 511; 2 *Whar.* 427; 8 *Watts* 51; 7 *Barr* 473; 1 *Whar.* 124; 2 *Saun. Ev.* 867; 3 *Burr.* 1824; 5 *East* 480; 5 *Term Rep.* 333.

*Michener,* for defendants.—To make a complete title, the possession and right of property must concur: 6 *Ser. & R.* 23; and that there was not in this case an *exclusive* and adverse possession.

If the deed was void, the title was in the heirs by the intestate laws. The declaration is not for an interruption of a privilege, *but for breaking the close* of plaintiffs, thus claiming a right in the land; but if *damages* were claimed, case and not trespass would be the remedy: 7 *Barr* 476.

[Trauger *v.* Sassaman.]

The opinion of the court was delivered February 5th, by

COULTER, J.—The evidence shows, with entire certainty, that the two congregations had been in possession of the grove and vacant space in front of the church, the *locus in quo*, for upwards of seventy years, as a place to put their carriages upon, and a place to hitch their horses; a convenience, or easement, or right, whatever it is called, without which the church itself would be useless in a country place.

They used it uniformly and exclusively, for there is not a scintilla of testimony that any body else claimed possession in all that lapse of time, or had any kind of possession or occupancy, or claimed to have it, in opposition to them. This possession on the part of the congregations would have given a right by prescription in England, even before the late statute on that subject; and in this State, there can be no doubt, but that the congregations acquired a title under the statute of limitations. The deed from the executors of Lawrence Pearson to his heirs is of no manner of consequence in the case. The will of said Pearson does not authorize his executors to sell the *locus in quo*, but to sell the lands and tenements of which he shall be lawfully seized at the time of his death. Now, the *locus in quo*, which he had never claimed in his life, and which had been in possession of the church many years before his death, and for near half a century before the date of the deed, was not by any fair or legal intendment embraced in the power to sell; which power was given for the purpose of paying debts and legacies. The *locus in quo* could contribute nothing to that purpose, and was sold twenty years after testator's death, to his heirs collectively, without naming them, as a place for shade, and for hitching their horses when convenient. It could not divert, hinder, or obstruct the right of the plaintiffs, acquired long before that deed was made. This was the rock on which the court below was wrecked. That deed was evidently made for some sinister purpose, perhaps the very purpose to which it is now attempted to use it, as the heirs appear to belong to the Reformed church. But the congregations have enjoyed, possessed, and asserted exclusively the right to possession for more than twenty-one years after the making this deed, such as it is, and before the trespass complained of. The congregations were, if the testimony is believed, tenants in common of the *locus in quo*, having been in the undisturbed use and possession of it under a claim of right for more than twenty-one years, in the only way in which they could possess it, and for the only use and purpose for which they needed it, and no one else claiming or possessing during that time, in opposition to their right. The plaintiffs, as tenants in common, the church itself being held by them as tenants in common, and also the graveyard, were also tenants in common of this accessory right, and when they were ousted by their co-tenants, were entitled to

2 T

[Trauger *v.* Sassaman.]

the action of trespass *quare clausum fregit.* There is no dispute as to the plaintiffs being ousted. The defendants built a wall which effectually excluded them from placing their carriages or hitching their horses in the *locus in quo.* In general, tenants in common cannot maintain trespass while the relation is acknowledged by the parties, because the possession of one is the possession of both; but when one is ousted unequivocally, he may maintain trespass for the injury. I may state here, that the evidence offered by the plaintiffs in relation to the graveyard ought to have been admitted, because it went to show that there was no necessity of enlarging the graveyard, under which pretence the defendants built the wall complained of. Nor did the defendants derive any superior right from the permission of the heirs of Pearson, or some of them, to enlarge the graveyard by building the wall. Even by the tenor of their deed from the executors, they were only entitled to the benefit of shade and the privilege of hitching their horses when convenient. But neither the heirs nor the defendants, some of whom are of the family of Pearson, had any right to build the wall, if the testimony is believed, for any purpose whatever.

On the other ground mooted in the court below, they were wrong in their instructions to the jury.

The court seemed to admit that plaintiff had an easement, but decided that an action of trespass would not lie for the disturbance of an easement. But there they were in error; for the disturbance or obstruction of a right of way or of water over another man's land, an action of trespass will lie. There is no reason why it ought not to lie as well as case, for such obstruction, that I can perceive. It is a direct injury to the plaintiffs' right of property; for a man may have property in an easement; and it has been frequently determined in England, that the action of trespass would lie for such an injury. As it is a question resting on authority, I cite 3 *Burr.* 1824; 2 *Saund. Ev.* 866–8; 5 *Term. Rep.* 333; 5 *East* 480. The same thing has often been decided in our courts: 1 *Whart.* 124, Hart *v.* Hill.

Judgment reversed and *venire de novo* awarded.